# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2020-17T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.S., JR.,

     Defendant-Appellant,

and

K.M. and M.J.,

     Defendants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF S.L.M. and A.M.S., Minors.

_____

     Submitted September 20, 2018 – Decided  October 3, 2018

     Before Judges Fuentes and Vernoia.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FG-11-0051-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Steven E. Miklosey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor A.M.S. (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant M.S., Jr. (Martin),[1] appeals from a December 18, 2017 Family Part Judgment of Guardianship terminating his parental rights to his daughter A.M.S. (Alice), who was born in 2013. We are convinced the court correctly determined the New Jersey Division of Child Protection and Permanency proved by clear and convincing evidence that termination of defendant's parental rights was in the child's best interests, and affirm.

Martin and K.M. (Kathy) are Alice's biological parents. Kathy is also the biological mother of S.L.M. (Stacey), who was born in December 2012. Stacey's biological father, M.J., is not a party to this appeal.

---

[1] We employ initials and pseudonyms for the parties and children for clarity and to protect the children's privacy.

In July 2014, the Division received a referral that Martin and Kathy abused or neglected Alice and Stacey. On September 18, 2014, the Family Part granted the Division care and supervision of the children. Two months later, the Division conducted an emergency removal of the children from Martin and Kathy's care, and the court granted the Division custody of the children. In May 2015, the Family Part entered an order finding Martin abused or neglected the children under N.J.S.A. 9:6-8.21(c) based on his stipulation that he placed the children at a substantial risk of harm by having an unremediated substance abuse problem during the time he cared for them.

In June 2017, the Division filed a guardianship complaint seeking the termination of Kathy's parental rights to Alice and Stacey and Martin's parental rights to Alice.[2] Three months later, the court accepted Kathy's identified surrender of her parental rights to her aunt, T.B. (Aunt Tara), with whom the children have resided since February 2015. The court entered a September 27, 2017 order terminating Kathy's parental rights, continuing the children in the care, custody and supervision of the Division, and directing that Martin attend

---

[2] The complaint also sought the termination of M.J.'s parental rights to Stacey and alleged M.J. was the "presumed father" of Stacey. The disposition of the guardianship complaint as to M.J. is not at issue on appeal.

"inpatient/outpatient substance abuse treatment and comply with all recommendations of the program."

The trial on the Division's guardianship complaint against Martin was conducted over the course of two days before Judge Audrey P. Blackburn. The Division presented the testimony of caseworker Christine Idland and Dr. Jonathan Mack, who was qualified as an expert witness in the fields of forensic psychology and neuropsychology. Martin did not present any witnesses.

Judge Blackburn subsequently issued an oral opinion summarizing the testimony of Ms. Idland and Dr. Mack, and finding both witnesses credible. The judge also made detailed factual findings as to each of the required elements of the best-interests-of-the-child standard set forth in N.J.S.A. 30:4C-15.1(a), and concluded the Division sustained its burden of proving by clear and convincing evidence it was in Alice's best interests to terminate Martin's parental rights. Judge Blackburn entered a December 18, 2017 Judgment of Guardianship terminating Martin's parental rights to Alice. This appeal followed.

Martin presents the following arguments for our consideration:

POINT I

The Trial Court Erred in Finding that the Division Made Reasonable Efforts to Provide Services to Help

4

[defendant] Correct the Circumstances Which Led to [A.M.S.'s] Removal from His Care and Custody.

POINT II

The Trial Court Erred in Finding that the Division Demonstrated that Termination of [defendant's] Parental Rights Will Not Do More Harm Than Good.

Our review of a trial court order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "A Family Part's decision to terminate parental rights will not be disturbed when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 368 (App. Div. 2015) (citing N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012)). "We accord deference to factfindings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448 (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). This enhanced deference is particularly appropriate where the court's findings are founded upon the credibility of the witnesses' testimony. N.J. Div. of Youth & Family Servs. v. H.B., 375 N.J. Super. 148, 172 (App. Div. 2005) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., 191 N.J. at 605). No deference is given to the trial court's "interpretation of the law," which we review de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010); Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999)).

A parent has a constitutionally protected right "to enjoy a relationship with his or her child." In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). That right, however, "is not absolute" and is limited "by the State's parens patriae responsibility to protect children whose vulnerable lives or psychological well-being may have been harmed or may be seriously endangered by a neglectful or abusive parent." F.M., 211 N.J. at 447 (citing E.P., 196 N.J. at 102). A parent's interest must, at times, yield to the State's obligation to protect children from harm. N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 397 (2009).

When terminating parental rights, the court must consider the "best interests of the child." K.H.O., 161 N.J. at 347. The Division's petition to terminate parental rights may only be granted if the following four prongs

enumerated in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence:

> (1)    The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2)    The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
> (3)    The division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4)    Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. "[T]he cornerstone of the inquiry [under N.J.S.A. 30:4C-15.1(a)] is not whether the biological parents are fit but whether they can cease causing their child harm."

A-2020-17T3

In re Guardianship of J.C., 129 N.J. 1, 10 (1992) (citing N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 607 (1986)).

Here, Martin argues there is insufficient evidence supporting the court's findings on the third and fourth prongs of the best interests standard. We are not persuaded. Based on our review of the record, we are convinced Judge Blackburn conducted the required fact-sensitive analysis of the statutory factors. See K.H.O., 161 N.J. at 348. Her finding the Division provided Martin with numerous and ongoing services to ameliorate the mental health, substance abuse and domestic violence issues that rendered him unable to safely parent Alice is supported by substantial credible evidence in the record. See F.M., 211 N.J. at 448. Similarly, Judge Blackburn's conclusion that termination of Martin's parental rights will not do more harm than good is amply supported by the uncontroverted testimony and evidence establishing there is no bond between Martin and Alice, there is a strong bond between Alice and her long-time caregiver Aunt Tara, Alice will suffer significant harm if she is removed from Aunt Tara's care and Alice will not suffer any harm by terminating Martin's parental rights. We therefore affirm substantially for the reasons set forth in Judge Blackburn's well-reasoned oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2020-17T3